# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1911

_____

Sophia Wilansky

*Plaintiff - Appellant*

v.

Morton County, North Dakota; Kyle Kirchmeier, in his official capacity; Adam J. Dvorak, in his personal capacity; Jonathan R. Moll, in his personal capacity

*Defendants - Appellees*

Thomas Iverson, in his personal capacity

*Defendant*

_____

No. 24-1919

_____

Sophia Wilansky

*Plaintiff - Appellant*

v.

Paul D. Bakke, In his personal capacity; Thomas M. Grosz, In his personal capacity; Matthew J. Hanson, In his personal capacity; Michael W. Hinrichs, In his personal capacity; Travis A. Nelson, In his personal capacity; Joshua W. Rode, In his personal capacity; Evan M. Savageau, In his personal capacity; Travis M. Skar, In his personal capacity; Glen Ternes, In his personal capacity; Justin W. White, In his personal capacity; Derek J. Arndt; Kyle Kirchmeier, In his official capacity; North Dakota Morton County

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: December 16, 2025
Filed: June 24, 2026
_____

Before LOKEN, LAVENSKI R. SMITH, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Sophia Wilansky was severely injured by an aerial warning munition police fired during a pipeline protest. She sued under 42 U.S.C. § 1983, alleging that county and state officers used excessive force and that Morton County, North Dakota failed to train them, ratified their unconstitutional actions, and maintained an unconstitutional policy or custom. Wilansky filed a second suit based on the same events, adding more defendants and allegations. The district court[1] dismissed both cases with prejudice. We affirm.

I.

These are the relevant facts alleged by Wilansky. *See Mitchell v. Kirchmeier*, 28 F.4th 888, 893 (8th Cir. 2022). In September 2016, protesters opposing the Dakota Access Pipeline camped on the southern side of Backwater Bridge on North Dakota Highway 1806. Authorities closed the bridge and stationed officers to its

_____

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

north. Police were armed with less-lethal munitions[2] and set up a barricade comprising two burned trucks backed by concrete roadblocks and rings of razor wire.

On the night of November 20, protesters clashed with police and towed away one of the barricade trucks. Police fired less-lethal munitions. When things quieted down, Wilansky walked to the bridge, where she remained for about an hour. Another protester joined her near the remaining truck, and they talked for a few minutes. Police ordered them to leave: "We see you behind the truck and underneath the truck. Get out now. Return to the south side of the bridge. Otherwise, we will use less-lethal munitions."[3] Neither moved, and the other protester yelled back that there was no one under the truck. Officers Dvorak, Arndt, and Hanson then fired less-lethal munitions, including a stinger ball, at Wilansky as she ducked behind a metal sheet next to the truck. Officers Skar, Hinrich, Rode, and Arndt moved west to get a better line of sight.

Wilansky ran south after a less-lethal munition fired by either Officer Arndt or Hanson hit her arm. About 30 yards away, she stopped to pick up a piece of plywood. As she leaned down, she was hit with an aerial warning munition[4] fired by Officer Moll. It tore the flesh off her arm, and she fell to the ground. Other protestors carried her away and drove her to a nearby casino, and she was taken to the hospital. Officers laughed and congratulated Officer Moll on his

---

[2]Less-lethal munitions include rubber and sponge bullets, pepper spray, pepper balls, lead beanbags, tear gas, and flashbangs.

[3]Wilansky's complaints used different language, but she does not dispute that we may consider the command's exact words as captured in a video recording of the incident. *See, e.g.*, *Young v. Keyes*, 176 F.4th 576, 577 (8th Cir. 2026); *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023).

[4]An aerial warning munition is a flashbang embedded in a less-lethal bullet. It is designed to be fired above crowds for dispersal.

"marksmanship."[5]   Wilansky was not arrested or detained.   Her left hand and forearm are permanently and severely injured.

## II.

These cases have an unusual procedural history.  When the defendants moved to dismiss the first complaint, the district court converted the motion to one for summary judgment and granted limited discovery so that Wilansky could identify the officers, including who fired the aerial warning munition.  She asked for leave to amend her complaint "to substitute [named] officers" for the John Doe defendants, and the district court granted leave for that purpose.  *See* Fed. R. Civ. P. 15(a)(2).

Wilansky's amended complaint did more than name the officers—it added factual allegations.  The defendants moved to strike, and the court ordered Wilansky to show cause why it should accept her beyond-the-scope changes.  Unsatisfied with her response, the court struck the new allegations and several new defendants and ordered Wilansky to file a second amended complaint that complied with its order, which she did.  But she also filed a second lawsuit with new factual allegations and claims against the ten stricken defendants.  The defendants then abandoned their summary judgment briefing and moved to dismiss based on the operative complaints in both cases.  The district court did so with prejudice.

We review the district court's dismissal *de novo*, *Mitchell*, 28 F.4th at 895, and its decision to do so with prejudice for abuse of discretion, *Ellis v. Nike USA, Inc.*, 158 F.4th 932, 936 (8th Cir. 2025). Wilansky concedes that the "district court correctly determined that the claims in the Primary and Companion Complaints must rise or fall together."

---

[5]The defendants dispute this, but we accept the facts alleged in the complaint. *Mitchell*, 28 F.4th at 893.

III.

Wilansky claims officers twice violated her Fourth Amendment right to be free from unreasonable seizures: first, when she was hit by a less-lethal munition as she hid behind the metal sheet and second, when the aerial warning hit her and she fell to the ground. To state a claim for a Fourth Amendment violation, she must plead "that a seizure occurred and that the seizure was unreasonable." *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023). "And because qualified immunity is at issue, [she] must show that it was clearly established that what happened to [her] was a seizure." *Keup v. Sarpy County*, 159 F.4th 533, 538 (8th Cir. 2025). A seizure requires an "objective[] manifest[ation]" of "an intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021) (emphasis omitted). "Force intentionally applied for some other purpose" is not enough, *id.*, and we have found it "was not clearly established as of November 2016 that use of force to disperse" is a seizure, *Dundon*, 85 F.4th at 1257; *see also Keup*, 159 F.4th at 538.

A.

We begin with Wilansky's claims against Officers Bakke, Hinrichs, Nelson, Rode, Savageau, Grosz, Ternes, White, and Skar. A § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Wilansky's complaint does not allege that defendants Bakke, Nelson, Savageau, Grosz, Ternes, or White did anything.[6] And the most she says about Officers Skar, Hinrichs, and

---

[6]Wilansky's first amended complaint says "Law Enforcement Officer Defendants rapidly fired at [her] with less-lethal munitions," but then that only some Officer Defendants "actively participated" "by firing less-lethal munitions" while others merely "assist[ed]" the "Officer Defendants who were firing." This is not enough when, despite discovery, she failed to plead what these officers did. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rhode is that they "moved west to get a better line of sight." That is not unconstitutional, nor is it a "specific and plausible" allegation showing "a causal link between each defendant and the specific wrongs" they committed. *Faulk v. City of St. Louis*, 30 F.4th 739, 745 (8th Cir. 2022) (emphasis omitted) (dismissing § 1983 claim against officer because the complaint did not set out facts linking his conduct to the alleged constitutional violations); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (requiring that the complaint "give the defendant fair notice of what the claim [against them] is and the grounds upon which it rests" (cleaned up)). The dismissal of the claims against these officers is affirmed.

## B.

Wilansky argues that Officers Dvorak, Arndt, and Hanson seized her when they fired less-lethal munitions at her as she hid behind the metal sheet. The district court found any seizure was not clearly established because the officers objectively manifested an intent to disperse. *See Dundon*, 85 F.4th at 1257. Wilansky asks us to infer intent to restrain because the officers fired without responding to the protestor who shouted that there was no one under the truck. But the officers ordered the pair to "get out now [and] return to the south side of the bridge," which was an order to disperse. Their lack of a response to the other protester does not change that. She also says we can infer an intent to restrain because she felt trapped when officers fired at her. But "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain." *Torres*, 592 U.S. at 317. It does not "depend on the subjective perceptions of the seized person." *Id.*

The same goes for Wilansky's arguments that Officer Dvorak showed his subjective intent to restrain her by shooting a stinger ball directly at her and that other unidentified officers revealed the same intent by celebrating after a later shot fired by Officer Moll hit her. *Torres*'s objective test "focuses on what the officer communicated through his actions, not what he subjectively thought," and the officer's subjective intent matters "only to the extent it has been conveyed to others." *Hight v. Williams*, 164 F.4th 672, 676 (8th Cir. 2026) (cleaned up). That Officer

-6-

Dvorak may have subjectively aimed to hit Wilansky with a dispersal weapon after she was ordered to disperse does not objectively manifest an intent to restrain. And that unidentified officers laughed after Officer Moll later hit Wilansky does not affect whether Officer Dvorak's, Arndt's, and Hanson's actions objectively manifested an intent to restrain Wilansky while she hid behind the metal sheet.

Wilansky's remaining arguments are belied by her own pleadings. First, she says that the officers had no reason to disperse her because she had been peacefully at the barricade for over an hour without objection. But the officers did eventually object. They ordered her to leave and warned they would use less-lethal munitions if she stayed. And they had reasons for wanting her to leave. She was trespassing, she failed to comply with a lawful order, and earlier that night there had been a violent protest. Second, she argues that continuing to fire after she started to retreat shows an intent to restrain. But she does not allege that Dvorak, Ardnt, or Hanson fired at her while she was retreating.

Officers Dvorak, Arndt, and Hanson are entitled to qualified immunity on Wilansky's Fourth Amendment claim against them because "it was not clearly established as of November 2016 that use of force to disperse . . . was a seizure." *Dundon*, 85 F.4th at 1257; *see also Quraishi v. St. Charles County*, 986 F.3d 831, 839–40 (8th Cir. 2021) (not clearly established that using tear gas to disperse reporters from protest site was a seizure); *Martinez v. Sasse*, 37 F.4th 506, 510 (8th Cir. 2022) (not clearly established that a push used to repel a lawyer was a seizure).

C.

That leaves Wilansky's claim that she was seized "by acquisition of control" when Officer Moll's aerial warning munition severely injured her arm, knocked her down, and left her unable to move. *See Torres*, 592 U.S. at 322 ("[A] seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement."). To overcome qualified immunity, Wilansky must point to law clearly establishing that Officer Moll seized her. *Keup*,

159 F.4th at 538.  A seizure by control requires "that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result," so Wilansky has to show it was clearly established that Moll's actions manifested an objective intent to restrain or stop her.  *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) (finding "it was enough" to allege a seizure where plaintiff "was meant to be stopped" by the officers' roadblock and "he was so stopped"); *see also Torres*, 592 U.S. at 317, 321–323.

Wilansky says *Torres* clearly established that shooting someone who is fleeing is a seizure.  But *Torres* found specifically that "the conduct of the officers— ordering Torres to stop and then shooting to restrain her movement—satisfies[d] the objective test for a seizure."  *Torres*, 592 U.S. at 318.  Wilansky was ordered to leave and was hit with the less-lethal munition after she stopped fleeing, so *Torres* does not have "sufficiently similar facts" to "squarely govern" Wilansky's situation. *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (cleaned up).[7]

None of the other cases Wilansky cites involve force used to disperse, *see, e.g.*, *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) (tasering unarmed, nonviolent individual suspected of only a misdemeanor is excessive force); *Terebesi v. Torreso*, 764 F.3d 217, 237–38 (2d Cir. 2014) (clearly established that the use of stun guns in certain contexts and manners was unreasonable), so they do not help clearly establish a Fourth Amendment violation, *see Graham*, 5 F.4th at 887.  And some were also decided after 2016, *see, e.g.*, *Z.J. ex rel. Jones v. Kansas City Bd. of Police Comm'rs*, 931 F.3d 672, 684 (8th Cir. 2019) (clearly established that the "use of flash-bang grenades is unreasonable where officers have no basis to believe they will face the threat of violence and they unreasonably fail to ascertain whether there are any innocent bystanders in the area it is deployed"), so they also

_____

[7]At oral argument, counsel argued that firing an explosive weapon must manifest an intent to seize, not disperse.  But counsel could not point to any clearly established precedent about whether using certain weapons in certain ways turns a dispersal into a seizure per se.  And in any case, we "do not consider arguments first raised at oral argument." *Bennie v. Munn,* 822 F.3d 392, 398 n.3 (8th Cir. 2016).

"do[] not constitute clearly established law for purposes of this case," *Dundon*, 85 F.4th at 1256.

Because Wilansky has not shown that Officer Moll committed a clearly established seizure, Moll is entitled to qualified immunity and the district court properly dismissed the Fourth Amendment claim against him. See *Dundon*, 85 F.4th at 1257.

IV.

Wilansky also alleges that Officers Dvorak and Moll used excessive force in violation of the Fourteenth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (excessive force claims that do not fit under the Fourth Amendment's or Eighth Amendment's protections may be brought under a Fourteenth Amendment substantive due process claim). To prevail, she must allege that the officer's behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. "Whether conduct shocks the conscience is a question of law," *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013), and "[p]roof of intent to harm is usually required," *Stearns v. Wagner*, 122 F.4th 699, 704 (8th Cir. 2024) (citation omitted).

Wilansky objects that this is the wrong test, and that we should instead consider whether the officers acted objectively reasonably. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (applying objective reasonableness standard to excessive force claims brought by pretrial detainees); *see also Edrei v. Maguire*, 892 F.3d 525, 537 (2nd Cir. 2018) (applying *Kingsley* to "all excessive force claims brought under the Fourteenth Amendment"). We disagree. *Kingsley* explicitly limited its holding to pretrial detainees. 576 U.S. at 402. It did not overturn *Lewis*, which requires a shocks-the-conscience test for excessive force claims by non-pretrial detainees. 523 U.S. at 846–47; s*ee also Agostini v. Felton*, 521 U.S. 203,

237 (1997) (if "a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls").  Since *Kingsley*, we have applied the shocks-the-conscience standard to Fourteenth Amendment claims.  *See, e.g.*, *Stearns*, 122 F.4th at 704 (Fourteenth Amendment excessive force claim); *see also Dundon*, 85 F.4th at 1257 (same); *cf. Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (Fourteenth Amendment due process claim).

According to Wilansky, Officer Moll shocked the conscience when he shot an aerial munition warning at a lone protester after partial compliance with a dispersal order.  But because qualified immunity is at issue, she has to show that violation was clearly established.  *See, e.g.*, *Webster v. St. Louis County,* 135 F.4th 614, 617 (8th Cir. 2025) (officer entitled to qualified immunity because it was not clearly established that his actions would violate inmate's Fourteen Amendment right).  "To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution."  *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (cleaned up).  Wilansky does not point us to any cases but instead argues it's a "commonsense inference" that aiming and firing an aerial munition weapon directly at someone is either a seizure or shocks the conscience.  That inference, if it exists, is not enough to carry her burden.  *See Zorn*, 146 S. Ct. at 930 ("Officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct." (cleaned up)); *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) ("The plaintiff bears the burden of proving that the law was clearly established.").

V.

Turning to *Monell*, Wilansky argues that because the plaintiff in *Mitchell* sufficiently alleged a pattern or practice of unconstitutional conduct against Morton County and Sherriff Kyle Kirchmeier, she has too.  *Mitchell*, 28 F.4th at 901.  But there are significant differences between Wilansky's and Mitchell's complaints. Both alleged that on October 22 and October 27, officers deployed less-lethal bullets

-10-

and pepper spray at protestors and that on November 20, they used water, chemical repellents, and other less-lethal weapons to break up the protest that immediately preceded Wilansky's injury. *Id.* at 893. Mitchell's complaint went on to say that during the two months between Wilansky's injury and his own in January 2017, "law enforcement officers continually deployed weapons such as bean bag guns" against peaceful protesters. *Id.* at 901. He also relied on Wilansky's injury to establish that the force used against him was part of a pattern, not an isolated incident. *Id.* Wilansky, on the other hand, alleged that as of November 2016, Morton County had an unconstitutional "policy or custom of using explosive less-lethal munitions." She does not allege that either October incident involved explosive less-lethal munitions, and the alleged misuse of those munitions on November 20 is not enough to establish "[t]he existence of a continuing, widespread, persistent pattern." *Id.* at 899. That Mitchell pleaded a pattern of excessive force against peaceful protestors as of January 2017, does not mean that Wilansky pleaded a pattern of inappropriately using explosive munitions as of November 2016.

VI.

Finally, we do not think the district court abused its discretion by dismissing Wilansky's claims with prejudice. In *Ellis*, we held that it was not an abuse of discretion to dismiss with prejudice when the plaintiff, faced with a 12(b)(6) motion, chose to "stand on her complaint," rather than seeking leave to amend and cure its deficiencies. 158 F.4th at 937. We also rejected the idea the court should have dismissed Ellis's claims without prejudice based on "a single line" in her opposition to the motion to dismiss which "request[ed] leave to amend again if the court dismissed her complaint." *Id.* Like Ellis, Wilansky had "months to properly seek leave to file a second amended complaint by filing a motion to amend." *Id.* at 936 (emphasis omitted). But she did not amend her pleadings as a matter of right, *see* Fed. R. Civ. P. 15(a)(1), nor did she move for additional leave to add or alter her factual allegations, *see* Fed. R. Civ. P. 15(a)(2). And unlike Ellis, she did not make even a passing request that if the court granted the defendants' motion, it should also

-11-

grant her leave to amend.  Under these circumstances, we affirm the dismissal of Wilansky's claims with prejudice.  *Ellis*, 158 F.4th at 937.

The judgments of the district court are affirmed.

_____